OPINION
Patricia Fowler appeals from her conviction in the Springfield Municipal Court of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.191(A) pursuant to her no contest plea.
In a single assignment of error, Ms. Fowler contends the trial court erred in refusing to suppress her breathalyzer test results when the State failed to prove the test was administered within two hours of the alleged violation as required by R.C.4511.19(D)(1).
Officer R. Ballentine of the Springfield Police Department testified that he was dispatched to a automobile crash scene at West Pleasant and South Lowry in the City of Springfield on December 16, 1998. Ballentine testified there were four vehicles involved in the crash and the defendant was in "unit 1 at the time of the crash traveling southbound on Lowry Avenue. Ballentine testified he was dispatched to the accident scene at 4:36 p.m. and he arrived at the scene within 10 or 11 minutes.
Officer Ballentine testified as follows:
 A. The first thing I did when I got there was I observed the intersection was completely blocked of vehicles. So I called for further assistance due to the all the vehicles blocking the roadway from each direction. I then contacted the drivers to find out who was injured. I asked each of the operators if they were injured. Several of them were obviously injured. Requested the squad. The assistance arrived, squad, medics and the other vehicles. At that point I was talking to each driver as to find out what happened. I contacted Mrs. Fowler when she was sitting in her vehicle, she didn't seem to understand what I was saying to her. So I asked her for. . .
 Q. Before you go on, I did want to ask you, what was the traffic on that street like?
A. Busy.
Q. It was busy?
 A. Yeah, usually at that time the street is not real busy, it's moderate traffic. It varies but 4:30 is about the time people get off work from South Yellow Springs Street and West Pleasant area.
Q. Okay, what time do you believe the crash occurred?
A. 4:35
MR. POTTER: Objection, your Honor, no foundation.
 THE COURT: Well, overruled. There may be the question of weight, and you'll have the opportunity to cross examine, but since this is a motion hearing, I'll allow that to stand.
MR. ALLEN: Q. Upon what are you basing that estimation?
 A. By the witnesses at the scene, the other drivers. We got the police division was called at 4:36. That was my dispatch time from the dispatch. And I asked the drivers when I got there what time the accident had occurred and they said within a minute or two.
MR. POTTER: Objection, move to strike, your Honor. Hearsay.
 THE COURT: Well, again, I'm going to overrule that. You'll have the opportunity to cross examine at the appropriate time.
MR. ALLEN: Q. Okay, you interviewed the witnesses, you said?
A. I talked to each driver, sir. Yes.
Q. And what did they tell you about the time of the crash?
 A. They advised me that the crash occurred at approximately 4:35 and that's what time I was dispatched-one minute later.
 Q. Okay, now, how did you, so you initially suspected that the crash occurred then. Is there anything else you did to verify those suspicions?
 A. No, sir. All the vehicles were still there. The injured parties were still there. So I had no reason to believe it didn't happen at that time.
Q. Did you have occasion to feel the hood of the car?
A. Yes, sir.
 MR. POTTER: Objection to the leading form of the questioning, your Honor.
 THE COURT: I'll sustain the objection, you can ask another question.
 MR. ALLEN: Q. Did you do anything else in order to investigate the crash?
 A. I checked all the vehicles — all the vehicles were functioning with the exception of the ones that were towed. The vehicle Ms. Fowler was in was shut off at the time I arrived.
Q. Where was Ms. Fowler?
 A. She was sitting in the driver's seat of the vehicle when I arrived. The vehicle itself was warm. It apparently had just been driven, because it was sitting partially in the middle of the intersection.
Q. Okay, no traffic could proceed beyond it?
A. No, sir. The whole intersection was blocked.
Q. Okay, thank you, nothing further.
THE COURT: Mr. Potter, you may inquire.
MR. POTTER: Thank you, your Honor.
 BY MR. POTTER: Q. Now, Officer, you have no personal knowledge of when this accident occurred, do you?
 A. That's correct. I only when by what I was relayed to at the scene.
 Q. And you're not trained as an accident reconstruction specialist, are you?
A. That's correct, sir.
 Q. And you made assumptions that the vehicle and the accident had just occurred, is that correct?
 A. That's correct, sir. Based on my experience, normally an accident doesn't get reported hours later.
 Q. And so as far as your personal knowledge, you cannot establish for us when this accident occurred, can you?
 A. That's correct, I can only by what the witnesses related at the scene.
Q. Okay, that's all I have.
Officer Jeffrey Meyer testified he was dispatched to the accident scene as a backup to Officer Ballentine to assist in clearing the blocked intersection. Meyer testified that Ms. Fowler was arrested and took a breathalyzer test at 5:48 P.M. that day.
In overruling the suppression motion the trial court gave the following explanation:
 In this case they have the officer, Officer Ballentine who testified he responded to dispatch that his description of the accident scene and that specifically, his observations as to the vehicles and the condition of the vehicles and the backing up of traffic certainly allows the Court to find that he arrived within a relatively short time after the occurrence of this accident.
 Define relatively short time any way you want. I would say certainly within 15 or 20 minutes. Again, in regard to operation, the defendant as testified to by Officer Ballentine as being seated in the driver's seat with the engine shut off, with the car still warm, in the middle of the intersection, blocking traffic.
 His testimony was that through other witnesses and his investigation, it was determined how the accident occurred and that the defendant was that operator.
 Again, Officer Meyer was called to assist. He corroborates the appearance at the scene, and also that the defendant was still in her vehicle at the time, and confirms that the test was given at 1748 p.m. or 5:48 p.m. Officer Ballentine testified that he arrived at 4:35 on the accident scene.
 I'd be more inclined to grant the motion if I felt that the time line was a little closer to the two-hour limitations. And obviously as that time period gets closer to that two-hour time limit, this Court recognizes that the burden would be on the State to be more precise in its presentation.
 But the Court does not feel that the State has failed to establish to the burden required here today that the test was administered within the two hour guidelines required by the Department of Health and also for our purposes that the Defendant was the operator or in operation of the vehicle within that two-hour time frame.
So on that basis the Court does not find that motion to be well taken. And the motion to suppress is denied. Appellant argues the State of Ohio failed to comply with the two hour test requirement of R.C. 4511.19(D) because neither police officer could provide first hand testimony as the time of the accident or violation. She argues the State should have produced the testimony of at least one of the other three drivers involved in the accident.
The State argues the trial court properly overruled the defendant's motion because there was ample evidence to support the trial court's finding that the test was administered within two hours of defendant's violation. The State also argues that Ballentine's hearsay evidence about what the witnesses told him as to the time of the accident was admissible because hearsay is admissible in suppression hearings. The State cites State v.Allison (February 6, 1995) Ross App. 94CA 2005, unreported.
In that case, the court of appeals held that hearsay evidence concerning a RFI survey was admissible in a suppression hearing. The court noted that Evid. R. 101(C) and 104(A) provide that the rules of evidence do not apply to admissibility determinations which are the responsibility of the judge., Appellant has failed to demonstrate any prejudice from the trial court's ruling on the admissibility of the hearsay presented by Officer Ballentine.
The trial court determined that the breathalyzer was administered to the defendant within two hours of her alleged violation without reference to what witnesses at the accident scene told Officer Ballentine. The trial court noted that Ballentine's observations of the accident scene indicated that Ballentine had been dispatched to the accident very shortly after it occurred, "certainly within 15 or 20 minutes." The trial court noted that the defendant was still seated in the driver's seat with the car still warm blocking traffic in the intersection. The court notes that the breathalyzer test was administered at 5:48 P.M. Allowing for the accident to have occurred up to 15 minutes before Ballentine was dispatched, this would place the accident or violation at 4:21 P.M., less than two hours before the administration of the test.
We need not address the argument of the State that hearsay is admissible at suppression hearings. Evid.R. 101(C)(1) provides that the Ohio Rules of Evidence do not apply to admissibility determinations when the issue to be determined by the court under Evid. R. 104. It is clear that an arresting officer may testify concerning what witnesses tell him in evaluating whether the officer has "probable cause" to arrest the defendant. This evidence is offered because the statement to the police officer is not offered for its "truth." On the other hand, what if the officer who stops an individual based on his own observations of the suspect's conduct fails to appear for the suppression hearing? May another officer testify what the detaining officer told him about his observations? We think not.
In State v. Alderman (1990), 70 Ohio App.3d 147, the Huron County Court of Appeals held that the provision of Evid.R. 101(C) excluding revocation of probation hearings from the Evidence Rules cannot result in the wholesale admission of hearsay in a trial court because the Fourteenth Amendment to the United States Constitution guarantees the minimum right to confront adverse witnesses absent some specific showing by the trial court of good cause for waiving the confrontation right. Although process due at a suppression hearing may be less demanding and elaborate than the protection accorded the defendant at trial, due process is still required at suppression hearings. See, United States v.Raddatz (1980), 447 U.S. 667, 679.
The appellant's assignment of error must be overruled.
The judgment of the trial court is Affirmed.
WOLFF, J., and FAIN, J., concur.